**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**


K.H., Individually and As
Parent of M.H., A Minor,

       Plaintiff,

v.                                             1:20-cv-2215


BROWNSBURG COMMUNITY SCHOOL CORPORATION,


       Defendant.


## COMPLAINT FOR ATTORNEY FEES

Plaintiff, by counsel, brings this action under The Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq. and Indiana law (511 IAC 7-45-11) to recover reasonable attorney fees incurred successfully prosecuting an administrative due process case against his disabled son's public school system (Defendant) in which he was the prevailing party. He was forced to retain legal counsel in order to vindicate the civil rights of his son as guaranteed by IDEA; specifically, its promise of a free appropriate public education (FAPE). Even though Plaintiff prevailed on all of his claims, Defendant refused to pay his reasonable attorney fees, necessitating this action.

1

In support of his Complaint, Plaintiff alleges:

## I.

## PARTIES

1. Plaintiff is a resident of Indianapolis, Indiana and the parent of a child with a disability, his 7-year old biological son, M.H., who has been diagnosed with Disruptive Mood Dysregulation Disorder (DMDD), Attention Deficit Hyperactivity Disorder (ADHD) and Autism Spectrum Disorder (ASD). M.H. is a child with a disability as defined by 20 U.S.C. § 140(3)(A) and 34 CFR § 300.8. At all relevant times, M.H. has been eligible to receive special education and related services through his public school system by reason of his disability.

2. Defendant, Brownsburg Community Corporation ("the District"), is an Indiana public school district which receives federal financial assistance and maintains its principal office in Hendricks County, Indiana.

## II.

## JURISDICTION

3. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(3)(A). To the extent Plaintiff has pendent claims arising under state law, 511 IAC 7-45-11 permits a prevailing party to bring an action for attorney fees in state or federal court. Therefore, this Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

### III.

### VENUE

4.  Venue is in this District pursuant to 28 U.S.C. § 1391(b).

### IV.

### THE UNDERLYING ADMINISTRATIVE PROCEEDINGS

5.  The clinical diagnosis of DMDD has replaced what used to be classified in previous editions of the Diagnostic and Statistical Manual (5th Edition) (DSM-5) as childhood bipolar disorder. It is a childhood condition characterized by extreme irritability, anger and frequent, intense temper tantrums. Symptoms include severe, persistent irritability or anger, intensive outbursts three or more times per week which are grossly disproportionate (in severity and duration) with the situation and the child's developmental level, verbal rages, physical aggression towards others and destruction of property. In a child with DMDD, even a relatively inconsequential event can trigger screaming and physical aggression.

6.  As a result of his condition, M.H. has a history of impulsivity, hyperactivity, defiance and almost daily disruptive and sometimes physically aggressive behaviors. His condition causes him to have intensive (sometimes violent) temper tantrums or "meltdowns" which include hitting, kicking and spitting on people, screaming, running away, using profanity and racial epithets, threatening to hurt or kill people, suicidal threats, hitting, being physically combative with school staff and healthcare providers when they attempted to restrain him, abusing animals and damaging property. He has displayed an unhealthy fascination with firearms, has difficulty distinguishing between

reality and fiction and fantasizes about his father (Plaintiff) dying and spiders devouring members of his family.

7.  After relocating from Mooresville in January 2019, Plaintiff enrolled M.H. in the District, where he struggled with the significant academic and behavioral challenges caused by his disability.

8.  Since November 2019, M.H. has been admitted as an inpatient in psychiatric hospitals several times, with his most recent discharge in May 2020. Since approximately July 1, 2020, he has been at Chaddock, a psychiatric residential treatment facility in Quincy, IL.

9.  Not surprisingly, the behaviors caused by M.H.'s mental illness and described above led to disciplinary problems at school, at one point resulting in 33 incident reports during a 44-day period and eventually leading the District to place him in its alternative school called Alternative Learning Program at Harrison Academy (ALPHA).

10. The District failed to provide M.H. with an appropriate full-day program in one of its schools or a therapeutic day placement.

11. After H.H. had a behavioral incident at school in January 2020 which was apparently the proverbial last straw, the District proposed putting him on a half-day schedule "for his own safety." Doing so contravened IDEA and Indiana's administrative rules for special education.

12. Plaintiff disagreed with the District's proposal for a shortened school day and retained legal counsel to challenge it. Pursuant to IDEA and Indiana law (511 IAC 7-45-3), on or about February 10, 2020, his attorney filed a *Request for Due Process Hearing* with the Indiana Department of Education ("Due Process I") asserting claims arising under IDEA

and Indiana's Administrative Rules for special education (commonly referred to as Article 7).

13. Upon receiving Plaintiff's request for an administrative hearing, the Indiana Superintendent of Public Instruction appointed an Independent Hearing Officer (IHO, the equivalent of an administrative law judge) to preside over Due Process I and issue a final decision.

14. Generally, Due Process I alleged that the District committed various violations of IDEA which denied M.H. a free appropriate public education, framed several issues for hearing and proposed a variety of remedies.

15. A redacted copy of Due Process I is attached hereto and incorporated by reference herein as Exhibit A.

16. Throughout the pendency of Due Process I, both parties were represented by two attorneys supported by paralegals.

17. A week after filing Due Process I, on or about February 17, 2020, Plaintiff sent the District a written settlement proposal. Among the items which Plaintiff requested in his proposal were a private placement of M.H. in a therapeutic day program and payment of Plaintiff's reasonable attorney fees.

18. In an effort to find a suitable private placement for M.H. (which was the District's legal responsibility), Plaintiff had him undergo an assessment by the St. Vincent therapeutic day school in Indianapolis, which determined that he was a candidate for its program, so Plaintiff asked the District to place him there.

19. The District responded to Plaintiff's proposal by letter dated February 27, 2020. It refused to provide M.H. with a private placement and refused to pay any of Plaintiff's attorney

fees, leading him to reasonably believe that the District was not interested in settlement at that time.[1]

20. Over the next several weeks, the District failed to provide any services to M.H. This not only violated IDEA and Indiana's Article 7, but caused M.H.'s condition to deteriorate significantly, resulting in his admission to Harsha Behavioral Center (a psychiatric treatment facility in Terre Haute) as an inpatient on or about April 8, 2020. This was M.H.'s second admission to that facility and his third inpatient hospitalization in six months (having been previously admitted to Harsha and Bloomington Meadows Hospital for acute mental health crises). As a result of this development, Plaintiff informed the District that he was not in a position to discuss settlement at that time because, among other things, it was unknown what type of placement M.H. was going to require since his hospitalization suggested that he might require a more restrictive placement than a public school or even a therapeutic day program could provide.

21. Indeed, Darla Hinshaw, M.D., M.H.'s treating psychiatrist at Harsha, recommended that he be placed in a psychiatric residential treatment facility (PRTF) upon his discharge from Harsha in May of 2020.

22. Even before M.H. was discharged from Harsha, Plaintiff, while not a mental health professional, had good cause to believe that M.H. required a residential placement. His attorneys researched residential programs across the country, making contact with no less than 14 different programs in an effort to find M.H. a suitable placement, even though doing so was the District's legal responsibility.

---

[1] At that point, Plaintiff had incurred around $6,000 in attorney fees.

23. On May 5, 2020, the District made an offer which proposed a residential placement at Gibault in Terre Haute (which had not accepted M.H. at that time and ultimately did not accept him) and payment of $5,000 in Plaintiff's attorney fees. The District did not provide M.H. with educational services at that time nor did it specify what compensatory services it would provide in order to remediate the months that M.H. had not received any academic instruction, counseling or behavioral services from the District.

24. Plaintiff responded that same day with a letter rejecting the District's offer and attaching an invoice documenting that he had incurred approximately $30,000 in attorney fees as of that date because of the District's failure to make an offer which met his son's needs.

25. While M.H. was still hospitalized at Harsha, on May 8, 2020, the parties convened a case conference and Plaintiff asked the District to maintain M.H.'s placement at Harsha until a long-term residential placement could be secured. The District refused Plaintiff's request, resulting in his discharge from Harsha six days later.

26. Even after M.H. was discharged from Harsha, instead of stepping in to help him, the District continued to sit idly by and let his condition worsen, failing to provide him with any educational or psychological services whatsoever. Nor did the District secure an appropriate educational placement for M.H. or make Plaintiff an offer which would remedy its ongoing failure to provide M.H. with the necessary services.

27. On June 5, 2020, the District made an offer which did not include a placement that had been secured for M.H., adequate compensatory services or the provision of current services. The District's offer included payment of $15,000 in Plaintiff's attorney fees, or one-half of the amount which Plaintiff had incurred and documented as of one month earlier.

28. Between May and July 2020, the parties continued to exchange written correspondence making settlement demands and offers as Plaintiff's counsel continued working to find a placement capable of providing M.H. with the necessary educational services. During this time, he was not placed as no residential program had accepted or agreed to accept him and the District was still providing him with absolutely no services whatsoever, giving rise to an increasingly substantial compensatory services claim.

29. Rather than find a placement for M.H. or provide him services, the District continued to insist that Plaintiff should just "settle" the action without a placement secured, without any services being provided and with no clear-cut plan as to what services M.H. would be provided, when and by whom.

30. The District's repeated attempts to dismiss the Due Process proceedings and coerce Plaintiff to accept its inadequate settlement offers ignore a parent's right to an impartial Due Process Hearing, which is clearly established in federal and state law and includes the right to present evidence and confront, cross-examine and compel the attendance of witnesses.

31. In an attempt to lay the groundwork for its defense to the instant Complaint, during the parties' back-and-forth the District repeatedly accused Plaintiff (whose attorneys were busy trying to find M.H. a placement) of "protracting litigation" and "unnecessarily increasing fees," which it called "inflated."

32. Not only did the District fail to provide M.H. with any educational or psychological services between February and July, it forced Plaintiff and his counsel to do the work of finding him a suitable placement—all the while making offers which fell woefully short of meeting M.H.'s needs in an effort to portray itself as "reasonable."

33. The District's settlement tactics forced Plaintiff to choose between accepting an inadequate proposal which did not meet M.H.'s needs in order to get his case over with or being mired in litigation which could drag on for months (longer if there were an appeal).

34. Each and every offer which the District made, starting June 5th and going forward, included an offer to pay only $15,000 of Plaintiff's attorney fees, notwithstanding the fact that he had already incurred and documented twice that amount as of one month prior and the District had to have known that Plaintiff continued to incur fees since then.

35. Beyond that, the settlement offers which the District made between February and July did not include all of the relief which Plaintiff was seeking and which was ultimately ordered by the IHO (as explained below); therefore, Plaintiff was substantially justified in rejecting them.

36. Plaintiff continued researching placements across the country in an effort to find a suitable program for M.H. Meantime, while Due Process I was pending, on or about May 22, 2020, the District developed a new Individualized Education Program (IEP) for M.H.

37. It was not until approximately July 1, 2020, that M.H. was finally placed in a residential program (Chaddock in Quincy, IL), and then only because Plaintiff's counsel had spent months researching, making phone calls, doing legwork and making arrangements—all of which they were forced to do because the District did not fulfill its obligations.

38. From approximately February through June of 2020, the District did not provide M.H. with any special education or related services whatsoever. Even when M.H. was finally placed in an out-of-state residential program in July, it was entirely due to the efforts of

Plaintiff's counsel; the District never offered a residential placement that was ready, willing and able to accept M.H.

39. On or about July 6, 2020, Plaintiff filed a second *Request for Due Process Hearing* ("Due Process II") alleging various deficiencies in the new IEP which the District had developed. A redacted copy of Due Process II is attached hereto and incorporated by reference herein as <u>Exhibit B</u>.

40. As with Due Process I, throughout the pendency of Due Process II, both parties were represented by two attorneys supported by paralegals.

41. In accordance with the Indiana Department of Education's standard practice, the same IHO who had been appointed to preside over Due Process I was assigned to hear Due Process II.

42. On July 16, 2020, the IHO issued an order framing the issues for hearing in Due Process I. See *Amended Issues for the Hearing* attached hereto as <u>Exhibit C</u>.

43. During the month of July, the parties continued their settlement discussions, culminating in an offer from the District dated July 28, 2020. After some negotiation, the parties jointly tendered a proposed *Findings, Final Order and Agreed Judgment Entry* which the IHO signed for both Due Process I and II on August 7, 2020 ("Agreed Entry"). A true and accurate copy of the Agreed Entry (with exhibit redacted) is attached hereto as <u>Exhibit D</u>.

44. Prior to its offer dated July 28, 2020, none of the District's offers included all of the relief sought by Plaintiff or ordered in the Agreed Entry; even its July 28th offer only included payment of less than half of Plaintiff's attorney fees (despite the fact that he had incurred twice that amount by early May) and no additional compensatory service hours.

45. The Agreed Entry orders relief more favorable than that offered by the District in any of its settlement offers made between February 27 and July 8, 2020.

46. A comparison of the relief which Plaintiff requested in Due Process I and II (Ex. A and B), the IHO's order framing the issues for hearing (Ex. C) and the Agreed Entry (Ex. D) reveals that the IHO ruled in Plaintiff's favor and ordered the District to provide Plaintiff with all (or substantially all) of the relief he requested.

47. In her Agreed Entry, the IHO made several findings which include (a) the District denied M.H. FAPE; and (b) Plaintiff is the "prevailing party on all issues delineated" in Due Process I and II. (Ex. D, ¶s 14 and 15)

48. Among other things, the Agreed Entry also ordered the District to: provide M.H. with a residential placement at its sole expense and reimburse Plaintiff for travel and lodging expenses; pay for an independent functional behavior assessment (FBA) of M.H. at public expense when he returns to public school; pay for the FBA evaluator to develop a behavior intervention plan (BIP) for M.H. and train Plaintiff and school staff on implementing the BIP; pay for an independent assistive technology (AT) evaluation of M.H.; pay for an independent speech-language evaluation of M.H.; reimburse Plaintiff for the Independent Educational Evaluation (IEE) of M.H. which Abigail Cole, Psy.D., HSPP conducted in the spring of 2020; provide M.H. with special education and related services consistent with Dr. Cole's recommendations; periodically re-evaluate M.H. following his discharge from the residential placement; pay for two of M.H.'s private providers to attend his case conferences; develop a transition plan for M.H.'s return to public school; and provide M.H. with 300 hours of compensatory educational services. (Ex. D, ¶s 16-36)

49. The IHO's Agreed Entry expressly entered judgment in favor of Plaintiff and against the District. (Ex. D, ¶37)

50. The Agreed Entry expressly adjudicates Plaintiff the "prevailing party" in the administrative proceedings. (Ex. D, ¶15)

51. In addition, Plaintiff is the prevailing party for purposes of 20 U.S.C. § 1415(i)(3)(B) because the Agreed Entry alters the legal relationship between the parties, Plaintiff succeeded on the merits of all the issues in the Due Process hearing requests and obtained most of the relief which he sought in his Due Process hearing requests.

52. Since the IHO lacks jurisdiction to award attorney fees, the Agreed Entry expressly does not include those.

53. Under the Agreed Entry, Plaintiff is the "prevailing party" in both Due Process I and I.

54. As such, Plaintiff is entitled to recover his reasonable attorney fees incurred prosecuting both of the Due Process matters and the instant action.

55. As of the date of this filing, Plaintiff has incurred approximately $50,000 in reasonable attorney fees. Since this matter is still pending, Plaintiff continues to incur attorney fees and reserves the right to seek recovery of additional reasonable fees incurred after filing this Complaint for legal services rendered prosecuting this action.

## V.

### RELIEF SOUGHT

Plaintiff respectfully requests the following relief:

1. Judgment in his favor and against Defendant;

2.  An award of reasonable attorney fees and costs incurred in prosecuting Due Process I and

    Due Process II;

3.  An award of reasonable attorney fees and costs incurred prosecuting this action;

4.  Pre- and post-judgment interest as allowed by law;

5.  Costs of this action; and

6.  All other relief reasonable in the premises.


                                            Respectfully submitted


                                            /S/ Thomas W. Blessing 15696-49
                                            MASSILLAMANY JETER & CARSON LLP
                                            11650 Lantern Rd., Suite 204
                                            317.576.8580
                                            317.203.1012 fax
                                            tom@mjcattorneys.com